IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1092

Filed 15 July 2026

Buncombe County, Nos. 20CR090299-100, 20CR090300-100

STATE OF NORTH CAROLINA

v.

DEKALIA LEIGH SIMPSON, Defendant.

Appeal by Defendant from judgments entered 22 February 2024 by Judge Karen Eady-Williams in Buncombe County Superior Court. Heard in the Court of Appeals 14 August 2025. Reconsidered upon Defendant's motion to withdraw opinion.

> *Attorney General Jeff Jackson, by Assistant Deputy Attorney General Marc D. Brunton, for the State.*
>
> *Jason Christopher Yoder for Defendant-Appellant.*

CARPENTER, Judge.

Dekalia Simpson ("Defendant") appeals from judgments entered after a jury found her guilty of two counts of carrying a concealed firearm. On appeal, Defendant argues the trial court erred by: (1) entering judgment on two counts of carrying a concealed weapon; (2) sentencing her to twenty-four months of probation; and (3) basing her sentence on improper consideration. After careful review, we vacate the consolidated judgment and remand for the trial court to arrest judgment on one count of carrying a concealed weapon and, if appropriate, resentence.

## I.  Factual & Procedural Background

On 5 June 2023, a Buncombe County grand jury indicted Defendant for: one count of possession with intent to sell or deliver marijuana, two counts of carrying a concealed firearm, one count of keeping and maintaining a vehicle for the keeping and selling of marijuana, one count of possession of marijuana paraphernalia, and one count of felony possession of marijuana.  The State voluntarily dismissed the charge of possession with intent to sell or deliver marijuana, and Defendant's case proceeded to trial on 19 February 2024.  The evidence tended to show the following.

Officers with the Asheville Police Department received assignments to monitor properties within the Asheville Housing Authority (the "Housing Authority").  Their responsibilities involved helping property managers and residents with issues ranging from neighborly disputes to resident complaints about drug use and violence. Generally, when investigating a Housing Authority issue, one officer would view live surveillance footage of the property in question from the Housing Authority's office, and the other officers would investigate on scene.

On 27 October 2020, an officer viewed live footage of the Klondyke apartment complex, which was part of the Housing Authority, due to increased reports from the property manager and residents regarding drug use, drug sales, and violent crime. Most of the reported activity centered around the basketball courts.  While surveilling the basketball courts, the officer noticed a white Audi sedan stopped in the parking lot.  The officer observed two individuals in the vehicle passing an item back and forth

that he believed to be a "marijuana cigar." The officer also believed the two individuals were "hot boxing" inside the enclosed vehicle. The officer relayed his observations to two officers, who promptly arrived on scene.

As they approached the vehicle, one of the new officers detected the odor of marijuana and observed two female passengers passing a cigarette back and forth. Defendant was in the driver's seat, and her juvenile sister was in the front passenger seat. The second officer approached the passenger side of the vehicle, while the third officer approached the driver's side. The officers initiated a vehicle search based on the odor of marijuana. After asking Defendant and her sister to exit the vehicle, the third officer discovered a firearm on the front driver's side of the vehicle. Defendant initially advised the officers that she had a concealed carry permit, which the officers later discovered was false.

Consistent with protocol to detain all passengers upon observation of a weapon inside a vehicle, the officers detained Defendant and her sister. The second officer also conducted a *Terry* frisk of Defendant. At this time, Defendant informed the officers about a second firearm in the vehicle inside a pink bag. After securing the two firearms, the officers continued to search the vehicle and discovered 123 grams of a "green leafy substance," approximately $10,480 in cash, and a digital scale. Based on the items seized from the vehicle, officers arrested Defendant and her sister.

At the close of evidence during trial, Defendant moved to dismiss all charges for insufficient evidence. The trial court denied Defendant's motion. The jury found

Defendant guilty of two counts of carrying a concealed firearm, a Class II misdemeanor, and not guilty of the remaining charges. During sentencing, defense counsel requested an unsupervised probation term and prayer for judgment continued. The trial court responded, "I hear your request . . . but I cannot ignore the facts of the case. Specifically, the amount of money, the guns, the vacuum-sealed item, whatever it was." The trial court admitted that it "question[ed] whether [the] stuff is even [Defendant's] stuff, to be quite honest." The trial court then stated, "I don't know if it's the people that you were associated with then. And hopefully you have removed yourself from these people or person, but they're taking you down the wrong path. You have too much going on for you for someone to mess it up for you."

After consolidating Defendant's two concealed weapons convictions, the trial court sentenced Defendant to thirty days in prison, suspended for twenty-four months of probation. The trial court indicated it chose a probationary period of twenty-four months as part of community punishment, but it did not make specific findings regarding its reasons for sentencing above the eighteen-month statutory maximum. Defendant timely gave notice of appeal on 7 March 2024.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2025).

## III. Issues

The issues are whether the trial court erred by: (1) entering judgment on two

counts of carrying a concealed firearm; (2) sentencing Defendant to twenty-four months of probation; and (3) basing Defendant's sentence on improper consideration.

## IV. Analysis

### A. Standard of Review

We review alleged statutory errors and issues of statutory construction de novo on appeal. *See State v. Mackey*, 209 N.C. App. 116, 120, 708 S.E.2d 719, 721 (2011); *State v. Patterson*, 266 N.C. App. 567, 570, 831 S.E.2d 619, 622 (2019). " 'The extent to which a trial court imposed a sentence based upon an improper consideration is a question of law subject to *de novo* review.' " *State v. Johnson*, 265 N.C. App. 85, 87, 827 S.E.2d 139, 141 (2019) (quoting *State v. Pinkerton*, 205 N.C. App. 490, 494, 697 S.E.2d 1, 4 (2010), *rev'd on other grounds*, 365 N.C. 6, 708 S.E.2d 72 (2011)). Under de novo review, this Court " 'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

### B. Sentence

Defendant argues the trial court erred by entering judgment on two counts of carrying a concealed firearm, sentencing her to an unauthorized period of probation without making specific findings, and basing her sentence on improper consideration. We agree in part, while recognizing that resentencing may be moot.

#### 1. Statutory Interpretation

First, Defendant contends the trial court erred by entering judgment on two counts of carrying a concealed firearm under section 14-269 because it should have arrested judgment on the second count. We agree.

"[T]he question of whether to impose one or multiple punishments . . . is a quintessential example of a policy decision reserved for a legislative body." *State v. Conley*, 374 N.C. 209, 215, 839 S.E.2d 805, 809 (2020). "In construing a criminal statute, the presumption is against multiple punishments in the absence of a contrary legislative intent." *State v. Boykin*, 78 N.C. App. 572, 576–77, 337 S.E.2d 678, 681 (1985) (citations omitted). Thus, " 'until the General Assembly unambiguously declares a contrary intent, we should assume that a single [act] in contravention of [a statute] does not spawn multiple indictments[]" and is one unit of prosecution. *State v. Smith*, 323 N.C. 439, 444, 373 S.E.2d 435, 438 (1988) (quoting *State v. Smith*, 89 N.C. App. 19, 25, 365 S.E.2d 631, 635 (1988) (Wells, J., concurring in part and dissenting in part)).

"Statutory language is either ambiguous or it is not." *Conley*, 374 N.C. at 216, 839 S.E.2d at 810. A "subjective belief as to the legislature's intent does not change the fact that there are two reasonable constructions . . . ." *Id.* at 216, 839 S.E.2d at 810. In cases of ambiguity, "the rule of lenity forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention." *Boykin*, 78 N.C. App. at 577, 337 S.E.2d at 681 (citation omitted).

Under North Carolina law, it is a Class II misdemeanor "for any person willfully and intentionally to carry concealed about his or her person *any* pistol or gun . . . ." N.C. Gen. Stat. § 14-269(a1), (c) (2019) (emphasis added). Exceptions to this crime include when "[t]he person is on the person's own premises, the person is carrying the concealed handgun in accordance with the scope of the concealed handgun permit, and the person is a military permittee . . . ." *Id.* § 14-269(a1)(1)–(3) (cleaned up).

In other cases, our appellate courts have concluded that the word "any" in similar statutes is ambiguous. *See Conley*, 374 N.C. at 216–17, 839 S.E.2d at 810; *State v. Smith*, 323 N.C. 439, 444, 373 S.E.2d 435, 438 (1988); *State v. Garris*, 191 N.C. App. 276, 283, 663 S.E.2d 340, 346 (2008). For example, under section 14-269.2(b), it is " 'a Class I felony for any person knowingly to possess or carry, whether openly or concealed, *any* gun, rifle, pistol, or other firearm of any kind on educational property or to a curricular or extracurricular activity sponsored by a school.' " *Conley*, 374 N.C. at 212, 839 S.E.2d at 807 (quoting N.C. Gen. Stat. § 14-269.2(b) (2019)) (emphasis in original). On review, our Supreme Court applied the rule of lenity due to the ambiguity, which " 'forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention[.]' " *Id.* at 212, 839 S.E.2d at 807 (quoting *Garris*, 191 N.C. App. at 284, 663 S.E.2d at 347). Accordingly, the Court concluded that a defendant may only

face conviction of one count of section 14-269.2(b) despite the presence of multiple firearms. *See id.* at 217, 839 S.E.2d at 810.

In reaching this conclusion, the Court in *Conley* relied upon *State v. Smith*. *See id.* at 213–18, 839 S.E.2d at 808–10. In *Smith*, the defendant was arrested for selling one obscene film and two obscene magazines. 323 N.C. at 440, 373 S.E.2d at 436. The defendant was tried on three separate counts of section 14-190.1(a), which made it unlawful to "sell, deliver or provide '*any* obscene writing, picture, record or other representation or embodiment of the obscene.'" *Id.* at 440–41, 373 S.E.2d at 436 (quoting N.C. Gen. Stat. § 14-190.1(a)(1) (1986)) (emphasis added). Because section 14-190.1(a) did not differentiate between "offenses based upon the quantity of the obscene items disseminated[,]" the Court explained the statute was ambiguous as to whether our General Assembly intended for a unit of prosecution per "each obscene item" or for a single unit of prosecution to "attach to the unlawful conduct of intentionally disseminating obscenity[]"—regardless of the number of obscene materials disseminated. *Id.* at 441, 373 S.E.2d at 436. Given the ambiguity, the Court applied the rule of lenity and concluded the defendant could only be convicted of one count of violating section 14-190.1(a). *Id.* at 444, 373 S.E.2d at 438.

*Conley* also relied upon *State v. Garris*. *See Conley*, 374 N.C. at 212, 839 S.E.2d at 807–08. In *Garris*, the defendant was convicted of two counts of possession of a firearm by a felon under section 14-415.1(a) for possessing two firearms during a single instance. 191 N.C. App. at 279, 663 S.E.2d at 344. Section 14-415.1(a) states

"it is 'unlawful for any [felon] to . . . possess . . . *any firearm* or any weapon of mass death and destruction . . . ." *Id.* at 283, 663 S.E.2d at 346 (quoting N.C. Gen. Stat. § 14-415.1(a) (2007)) (emphasis in original). Our Court determined "any firearm . . . is ambiguous in that it could be [reasonably] construed as referring to a single firearm or multiple firearms." *Id.* at 283, 663 S.E.2d at 346. As a result, we applied the rule of lenity and concluded the trial court erred by entering two convictions against the defendant for possession of a firearm by a felon. *Id.* at 285, 663 S.E.2d at 348.

Here, section 14-269(a1) "is ambiguous as to the allowable unit of prosecution." *See Conley*, 374 N.C. at 217, 839 S.E.2d at 810. Section 14-269(a1) is similar in structure to the statutes in *Conley*, *Smith*, and *Garris* as they all use "the word 'any' followed by a list of singular nouns to enumerate the prohibited items[.]" *See Conley*, 374 N.C. at 217, 839 S.E.2d at 810; *see also Smith*, 323 N.C. at 441, 373 S.E.2d at 436; *Garris*, 191 N.C. App. at 285, 663 S.E.2d at 348. Because "any" is ambiguous, we apply the rule of lenity in favor of Defendant. *See Conley*, 374 N.C. at 217, 839 S.E.2d at 810. Accordingly, the trial court erred by failing to arrest judgment on one of Defendant's convictions because she "is guilty of only one count" under section 14-269. *See Smith*, 323 N.C. at 444, 373 S.E.2d at 438. Bound by the *Conley* line of cases, we vacate the consolidated judgment and remand for the trial court to arrest judgment on one count of carrying a concealed weapon. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals

has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

### 2. Probationary Period

Next, Defendant argues the trial court erred by sentencing her to twenty-four months of supervised probation without making a specific finding that a longer period of probation was necessary than the eighteen-month statutory maximum. We agree.

The length of a probationary period is governed by section 15A-1343.2(d), which provides that "[f]or misdemeanants sentenced to community punishment," the original probation period cannot be "less than six nor more than 18 months." N.C. Gen. Stat. § 15A-1343.2(d)(1) (2025). The trial court, however, can impose a longer term by making "specific findings that longer or shorter periods of probation are necessary[.]" *Id.* § 15A-1343.2(d).

Here, the trial court failed to make a specific finding that a longer term was necessary. *See id.* Defendant was convicted of two Class II misdemeanors, had no prior convictions, and was a Level I offender for misdemeanor sentencing purposes, resulting in a statutory maximum probation period of eighteen months. *See id.* § 15A-1343.2(d)(1). The trial court indicated it chose a probationary period of twenty-four months as part of community punishment, but it did not explain its reasoning through specific findings. *See id.* § 15A-1343.2(d). The trial court, therefore, erred. *See id.*

### 3. Improper Consideration

Lastly, Defendant argues the trial court erred by improperly considering her "acquitted conduct" during sentencing. Specifically, Defendant challenges the trial court's statement during sentencing that it "cannot ignore . . . the amount of money, the guns, the vacuum-sealed item, whatever it was." We disagree.

During sentencing hearings, the trial court "is permitted wide latitude and the rules of evidence are not strictly enforced." *State v. Smith*, 300 N.C. 71, 81, 265 S.E.2d 164, 171 (1980) (citations omitted). Generally, "in determining the sentence to be imposed, the trial judge may consider such matters as the age, character, education, environment, habits, mentality, propensities and record of the defendant." *State v. Morris*, 60 N.C. App. 750, 754–55, 300 S.E.2d 46, 49 (1983) (citation omitted).

Our courts have concluded improper considerations include a defendant's rejection of a plea offer, *State v. Boone,* 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977); a defendant's finances, *State v. Massenburg*, 234 N.C. App. 609, 617, 759 S.E.2d 703, 709 (2014); the religion of either a defendant or the judge, *State v. Earls*, 234 N.C. App. 186, 194, 758 S.E.2d 654, 659 (2014); and purported conduct not alleged in the indictment, *State v. Swinney*, 271 N.C. 130, 133, 155 S.E.2d 545, 548 (1967).

Here, the trial court did not base sentencing on an improper consideration by noting the type and quantity of items seized from Defendant's vehicle. *See Boone*, 293 N.C. at 712, 239 S.E.2d at 465; *Massenburg*, 234 N.C. App. at 617, 759 S.E.2d at 709; *Earls*, 234 N.C. App. at 194, 758 S.E.2d at 659; *Swinney*, 271 N.C. at 133, 155 S.E.2d at 548. Despite Defendant's acquittal of the charges related to the seizure of

those items, the indictment alleged the "acquitted conduct," and the evidence presented at trial placed Defendant inside the vehicle with the items. Moreover, the trial court's main concern in its statement was not necessarily Defendant's possession of those items, but rather the "appearance" of Defendant's proximity to those items. *See Morris*, 60 N.C. App. at 754–55, 300 S.E.2d at 49. For example, the trial court admitted that it "question[ed] whether [the] stuff is even [Defendant's] stuff, to be quite honest" and told Defendant that it was concerned the people she was associating with were leading her down the wrong path. While we caution against discussing "acquitted conduct" during sentencing, the record does not reflect the trial court improperly considered the acquitted conduct in sentencing Defendant. *See id.* at 754–55, 300 S.E.2d at 49.

### 4. Remedy

Generally, "to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion[.]" N.C. R. App. P. 10(a)(1) (2025). "An error at sentencing is not considered an error at trial for the purpose of Rule 10[(a)](1) because this rule is 'directed to matters which occur at trial and upon which the trial court must be given an opportunity to rule in order to preserve the question for appeal.' " *State v. Curmon*, 171 N.C. App. 697, 703, 615 S.E.2d 417, 422 (2005) (quoting *State v. Hargett*, 157 N.C. App. 90, 93, 577 S.E.2d 703, 705 (2003)). Thus, a defendant does not have "to object at sentencing to preserve this issue for appellate review." *Id.* at 704, 615 S.E.2d at 422–23.

"Both the fifth amendment to the United States Constitution and article I, section 19 of the North Carolina Constitution prohibit multiple punishments for the same offense absent clear legislative intent to the contrary." *State v. Etheridge*, 319 N.C. 34, 50, 352 S.E.2d 673, 683 (1987) (citation and emphasis omitted). "That the offenses were consolidated for judgment does not put to rest double jeopardy issues, because the separate convictions may still give rise to adverse collateral consequences." *Id.* at 50, 352 S.E.2d at 683 (citations omitted).

"[W]hen an offender's offenses are consolidated, '[t]he judgment shall contain a sentence disposition specified for the class of offense and prior record level of the most serious offense[.]' " *State v. Spence*, 248 N.C. App. 103, 109, 787 S.E.2d 455, 459 (2016) (quoting N.C. Gen. Stat. § 15A-1340.15(b) (2015)). Moreover, "[f]or purposes of determining the prior record level, if an offender is convicted of more than one offense in a single superior court during one calendar week, only the conviction for the offense with the highest point total is used." N.C. Gen. Stat. § 15A-1340.14(d) (2025).

Generally, "[a] judgment will not be disturbed because of sentencing [errors] unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *State v. Pope*, 257 N.C. 326, 335, 126 S.E.2d 126, 133 (1962). In other words, "[a] defendant is prejudiced by [sentencing] errors . . . when there is a reasonable possibility that, had the error in

question not been committed, a different result would have been reached[.]" N.C. Gen. Stat. § 15A-1443(a) (2025). The defendant has the burden to show prejudicial error. *Id.*

Yet, "[a] violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt." *Id.* § 15A-1443(b). "The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." *Id.*

Here, while we are mindful of Defendant's potential double jeopardy concerns, *see Etheridge*, 319 N.C. at 50, 352 S.E.2d at 683, the practical harm resulting from the trial court's error is a challenge to articulate, *see* N.C. Gen. Stat. § 15A-1443(a). We, therefore, explain our reasoning below and invite the Supreme Court to clarify the issue.

We struggle to envision adverse collateral consequences under these circumstances. *See Etheridge*, 319 N.C. at 50, 352 S.E.2d at 683. Because only the highest convicted offense from one calendar week is counted for any hypothetical future sentences, Defendant's prior record level remains the same regardless of whether the jury convicted her once or twice for the firearm possession. *See* N.C. Gen. Stat. § 15A-1340.14(d). Thus, the consolidated judgment does not appear to affect any future convictions that Defendant may face. *See Etheridge*, 319 N.C. at 50, 352 S.E.2d at 683.

Because Defendant's sentence potentially implicates constitutional concerns, however, we hesitate to conclude that the trial court's error was harmless beyond a reasonable doubt. *See* N.C. Gen. Stat. § 15A-1443(b). Indeed, the issue is probably moot, as Defendant's probation has likely ended. *See State v. Godbey*, 241 N.C. App. 114, 118, 772 S.E.2d 123, 126 (2015) (concluding that, "although the trial court erred, the issue is now moot, given that defendant has served his sentence and cannot be resentenced.").

Generally, " 'this Court will not hear an appeal when the subject matter of the litigation . . . has ceased to exist.' " *In re Swindell*, 326 N.C. 473, 474, 390 S.E.2d 134, 135 (1990) (quoting *Kendrick v. Cain*, 272 N.C. 719, 722, 159 S.E.2d 33, 35 (1968)). "Once a defendant is released from custody, 'the subject matter of [a sentencing error] has ceased to exist and the issue is moot.' " *State v. Stover*, 200 N.C. App. 506, 509, 685 S.E.2d 127, 130 (2009) (quoting *In re Swindell*, 326 N.C. at 475, 390 S.E.2d at 135).

Here, the issue with Defendant's sentence may have ceased to exist. *See In re Swindell*, 326 N.C. at 474, 390 S.E.2d at 135. If Defendant completed her probationary term successfully, then the sentencing issue is moot. *See Godbey*, 241 N.C. App. at 118, 772 S.E.2d at 126. If the trial court extended, modified, or revoked Defendant's probation, however, the sentencing issue may not be moot. *See Stover*, 200 N.C. App. at 509, 685 S.E.2d at 130. Accordingly, we authorize the trial court to resentence Defendant if warranted under the circumstances.

## V. Conclusion

We conclude the trial court erred by sentencing Defendant to twenty-four months of supervised probation without making a specific finding that a longer period of probation was necessary, but it did not err by mentioning the items seized from Defendant's vehicle despite her acquittal from the related charges. We also conclude that the trial court erred by entering judgment on Defendant's two convictions for carrying a concealed firearm. We, therefore, vacate the consolidated judgment and remand to arrest judgment on one count. If the sentencing issue is moot, the trial court must enter judgment on the other count. If the sentencing issue is not moot, however, the trial court must resentence.

VACATED AND REMANDED.

Judges TYSON and ARROWOOD concur.